[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PETITION FOR NEW TRIAL (NO. 101)
This petition for a new trial presents the following issues: whether the petitioner is entitled to a new trial based on alleged juror misconduct which occurred in his initial trial and/or based on the unreliability of testimony given in petitioner's initial trial by a witness who had previously been a co-defendant.
On December 27, 1994, the petitioner, Danarius Dukes, was convicted of attempted murder, assault in the first degree, and attempted robbery following a jury trial in the Bridgeport Superior Court. He filed this petition for a new trial on June 22, 1995, pursuant to Practice Book § 904 and General Statutes § 52-270, alleging that he is entitled to a new trial based on newly discovered evidence and in the interests of justice. These contentions are based on alleged juror misconduct and on the unreliability of a witness who testified at his trial.
 A.
The petitioner's first contention is that a new trial is warranted based on newly discovered evidence of juror misconduct that allegedly took place during his trial. Specifically, the petitioner claims that a juror named Mr. Ramos, who was a long-time acquaintance of the petitioner's family and who owed the petitioner money, was empaneled as a juror despite petitioner informing his attorney of the relevant facts and circumstances. Thus, the petitioner argues that Mr. Ramos was biased toward reaching a result which would relieve him of his financial obligations to the petitioner. In addition to owing the petitioner CT Page 2681 money, Ramos allegedly engaged in improper conduct during the trial by discussing the personal life of the petitioner with another member of the jury and with petitioner's brother.
"The standard that governs the granting of a petition for a new trial based on newly discovered evidence is well established. The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial." Asherman v. State,202 Conn. 429, 434, 521 A.2d 578 (1987). "In analyzing the foregoing factors, trial courts are guided by the general principle that a new trial should be granted because of newly discovered evidence only if an injustice was done or it is probable that on a new trial a different result would be reached." Johnson v. State,36 Conn. App. 59, 63-64, 647 A.2d 373 (1994). "This strict standard is meant to effectuate the underlying equitable principle that once a judgment is rendered it is to be considered final, and should not be disturbed by post trial motions except for a compelling reason." (Internal quotation marks omitted.) Ashermanv. State, supra, 202 Conn. 434.
"Juror misconduct which results in substantial prejudice to the defendant is not to be tolerated." State v. Asherman,193 Conn. 695, 736, 478 A.2d 227, cert. denied, 470 U.S. 1050,105 S.Ct. 1749, 84 L.Ed.2d 814 (1984). However, "[t]he dereliction must be such as to deprive the defendant of the continued, objective and disinterested judgment of the juror, thereby foreclosing the accused's right to a fair trial." Id.
At the hearing, the petitioner testified that during the voir dire stage of his trial, he told his defense counsel about the circumstances surrounding juror Ramos, including the fact that Ramos owed him money. The petitioner claims that his attorney nevertheless chose to empanel juror Ramos and that petitioner did not continue to object to juror Ramos because he felt that his attorney knew what was best for him. The petitioner's mother offered testimony which appeared to corroborate the petitioner's testimony. However, petitioner's mother also testified that she was not sitting at the defense table with her son and her son's attorney, so that she could not hear much of what was said between the two. At the hearing, petitioner's defense counsel testified that he does not believe he was told that juror Ramos owed the CT Page 2682 petitioner money. Petitioner's defense counsel also produced the petitioner's former file and testified that he made no notes on the voir dire sheet respecting juror Ramos, whether positive or negative. According to petitioner's counsel, he regularly records all relevant information made known to him about a juror in a client's file, including comments or opinions of the client concerning a particular juror. Petitioner's counsel testified that the absence of any notes concerning juror Ramos probably indicates that the petitioner did not mention to him any relationship or acquaintance with juror Ramos.
Sufficient evidence was presented to show that juror Ramos took part in inappropriate conduct during the trial, although he was not present at the hearing. The other juror with whom Ramos spoke, Crawford, testified that during one lunch break, Ramos discussed the petitioner's choice of friends in a somewhat negative tone, indicating that petitioner was hanging around with the wrong crowd. Crawford also testified that Ramos had a discussion with the petitioner's brother as the three men rode the elevator up to the courtroom one day. Crawford testified that he did not respond to Ramos when Ramos spoke about the petitioner, and that he did not ask any questions of, or solicit any information from, Ramos. Crawford also testified that he was able to, and did in fact, follow the judge's instructions to reach a verdict based only on the evidence heard in the courtroom.
Although the evidence presented at the hearing demonstrates that some degree of inappropriate juror conduct occurred, the court finds that it was not sufficiently harmful to have deprived the petitioner of a fair trial. See State v. Asherman, supra,193 Conn. 736. First, the court finds that the petitioner knew of the facts and circumstances relating to juror Ramos and failed to disclose that knowledge to his attorney and/or the presiding judge in time to disqualify him, hoping instead for a favorable outcome. Thus, the petitioner has not demonstrated that "the proffered evidence . . . could not have been discovered earlier by the exercise of due diligence." Asherman v. State, supra, 202 Conn. 434.
The court also finds that the conversation between Ramos and Crawford did not amount to significant or harmful juror misconduct. First, any effect on Crawford was the fruit of a tainted communication made by a juror of whose circumstances the petitioner was aware and could have challenged. Second, Crawford followed the court's instructions, did not respond to Ramos's remarks, and did not himself solicit information from Ramos. Thus, CT Page 2683 the petitioner has not sufficiently demonstrated that the alleged conduct "would be material on a new trial"; Asherman v. State, supra, 202 Conn. 434; or that "it is likely to produce a different result in a new trial." Id.
 B.
The petitioner's second contention is that the interests of justice require a new trial because of the unreliability of the testimony of a particular witness at petitioner's trial. That witness, a Mr. Reese, had apparently been a co-defendant with the petitioner until the charges against him were dropped and/or modified sometime prior to petitioner's trial. According to the petitioner, the facts and circumstances surrounding this witness's testimony would have seriously undermined his credibility if made known to the jurors at petitioner's trial. (Petitioner's Brief, 14). Thus, the petitioner argues that there is "reasonable cause" within the meaning of General Statutes § 52-270, which sets forth the causes for which a new trial may be granted.
The petitioner presented no evidence at the hearing to support this contention, opting to rely solely on the argument presented in his brief. The argument presented in petitioner's brief does not persuade the court that "reasonable cause" exists for the granting of a new trial based on the unreliable testimony of a previous co-defendant. The court finds that the petitioner had an adequate opportunity to cross-examine this witness at trial and to bring the relevant facts and circumstances bearing on his credibility to the attention of the jury at that time.
Thus, having failed to adduce any evidence at trial to support the proposition that this evidence was discovered after trial or that he was deprived of the opportunity to cross-examine the witness to bring any credibility issues to the attention of the jury, the court finds that the petitioner is not entitled to a new trial based on the allegedly unreliable testimony of witness Reese.
For the above stated reasons, the petitioner Danarius Dukes's petition for a new trial is denied.
JOHN W. MORAN, JUDGE CT Page 2684